JOHN T. DOOLEY *vs.* ARNOLD G. POTTER.

Berkshire.    September 28, 1887. — February 29, 1888.

Present: MORTON, C. J., FIELD, DEVENS, W. ALLEN, & KNOWLTON, JJ.

*Mortgage — Waiver — Accord and Satisfaction — Title — Interest.*

A mortgage of land was made to secure certain notes. The mortgage was delivered, but a memorandum signed by the mortgagee provided for the safe keeping of the notes until the land was measured and the notes proportionately increased or reduced, and for remedying "any defects in said title." The notes were never delivered, but the mortgagor caused payments to be made on them, and in a second mortgage excepted the prior mortgage from the covenants, and stated the amount payable thereon; and a reconveyance of a portion of the land was made to the mortgagee. *Held*, on a bill in equity brought by an assignee of

the second mortgage to redeem the land from the first mortgage, that the notes and mortgage became valid and subsisting by waiver, and that the title was made good.

The mortgagor made an agreement with an assignee of the first mortgage, which provided that the assignee should apply the proceeds of standing timber, sold to him by the mortgagor, in payment of the balance due on the notes, on which interest was to cease at once; but no such application was made by the assignee, and the performance of the agreement was abandoned. *Held*, that there was no accord and satisfaction of the mortgage debt, and that interest did not cease on the notes.

The memorandum provided, in terms, that, "if said land falls short the required number of acres to amount to the sum set forth in said notes at four dollars per acre, the said notes are to be reduced in that proportion." The sum of the notes was much larger than the value of the land described in the mortgage at that price, and the measurement reduced the quantity somewhat, but it appeared that other considerations besides the land entered into the notes. *Held*, that the "sum set forth in said notes" did not mean the whole amount of the notes, but that sum included in them which represented the land at that price, which latter sum only was to be reduced.

A master, to whom the case was referred, allowed a payment to free the land from an incumbrance; a note due in five, but described as due in four, years; taxes and interest thereon; and interest on the costs of a foreclosure suit; and reckoned interest in his account according to the rule of partial payments. *Held*, that the allowances were right, and that the interest was correctly computed.

BILL IN EQUITY, filed August 25, 1879, to redeem a parcel of land in the town of Florida, in this Commonwealth, from a mortgage held by the defendant. After the former decision, reported 140 Mass. 49, the case was again heard by *W. Allen*, J., on a further report of the master and exceptions thereto, and reserved for the consideration of the full court. The facts appear in the opinion.

*M. E. Couch*, for the plaintiff.

*A. Potter*, for the defendant.

W. ALLEN, J. In May, 1869, Peter Dooley made a mortgage to one Wiley, who assigned it, on November 27, 1869, to one Ketchum, who assigned it, on August 17, 1876, to the defendant. The plaintiff holds the equity of redemption under a mortgage deed given by Peter Dooley, on August 7, 1871, to one Edmonds, and assigned by Edmonds's administrator to the plaintiff in 1878, and seeks in this suit to redeem the land from the first mortgage. The case was referred to a master to report the amount due upon the mortgage held by the defendant, and was reserved for the full court upon the master's report and exceptions thereto. We will first consider the plaintiff's exceptions in their order.

1. The first exception is to the allowance of anything as due upon the mortgage. The mortgage, which was of land conveyed by Wiley to Dooley as part of the same transaction, was to secure the payment of six notes, one of $100, and five of $432 each, one of which was reduced by the indorsement of a payment of $260. The mortgage was delivered, but the notes were put into the hands of one Robinson, with a writing signed by the mortgagee to the effect that it was agreed by him that the notes should remain in the hands of Robinson for safe keeping, and not be used for the benefit of the mortgagee until the land should be measured, and if there was found a deficiency or an excess in quantity the notes were to be reduced or increased in proportion, and all incumbrances were to be paid, and any defects in title made good. The objection is, that the terms of the memorandum have not been complied with, and the notes have never been delivered. The land was measured, and was found to be deficient in quantity. No indorsement was made on the notes. There were some defects in the title, but they appear to have been subsequently remedied; but that is not material, because it is obvious that the terms of the memorandum were not performed, that performance was waived by the mortgagor, that the memorandum was treated by all parties as not in force, and that the notes were valid, subsisting notes. It is not necessary to consider the objection of the plaintiff, that Peter Dooley could not, as against the plaintiff, waive performance after his mortgage to Edmonds in 1871. Before that time one of the large notes had been taken up, and a payment made upon another; before that time, in November, 1869, when only the small note was due, the mortgage had been assigned by Wiley to Ketchum, under whom the defendant claims, and Peter Dooley had made an agreement with Ketchum which made no reference to the memorandum, but recognized the notes as in force, and provided for payments to be made upon them; and at that time, in the mortgage to Edmonds, under which the plaintiff claims, the mortgage is excepted from the covenants, and the amount to be paid upon it is stated.

The plaintiff also claims that there was an accord and satisfaction of the mortgage debt under the agreement between Peter Dooley and Ketchum, dated January 1, 1875, which was in sub-

stance, so far as relates to this point, that Ketchum that day bought of Dooley a quantity of timber standing on certain land in Vermont, at a certain price per thousand feet, the amount to be thereafter ascertained, and to be sufficient to pay the balance due on the notes and mortgage, and Ketchum was to have three years in which to take off the timber. Very little timber, if any, was taken out by Ketchum under this agreement, and none was applied by him on the mortgage debt. Neither the agreement nor anything done under it extinguished or satisfied the debt.

2. The plaintiff's second exception is to the amount allowed by the master on account of the deficiency in the quantity of land. The master found the deficiency to be thirteen acres, and allowed four dollars an acre under the memorandum before referred to, which provided that, "if said land falls short the required number of acres to amount to the sum set forth in the said notes at four dollars per acre, the said notes are to be reduced in that proportion." The plaintiff contends that the notes were given only for the price of the land which was at that time conveyed by Wiley to Peter Dooley, and that the agreement is to be so construed as to reduce the notes to the sum that the land when measured would amount to at four dollars an acre. This is one construction of the language of the memorandum, and the most natural one ; but it is not plain, and the subject matter and attending circumstances show that it was not the meaning of the parties.

The land lay partly in Vermont and partly in this State. The part in Vermont was fixed by the deed at 200 acres, the part in this State was said to be 250 acres more or less. It was only the land in this State which could fall short or exceed 250 acres on measurement. This makes the required number of acres in it to make up the amount of the notes, to be 365, or 115 more than was estimated and stated in the deed, and the notes and mortgage to be $468 more than the parties believed to be the whole purchase money for the land, which, it is found, they put at the price of four dollars an acre. It was found by the master, that there had been a contract between Wiley and Peter Dooley by which Wiley had agreed to convey to Dooley 800 acres of land, which included that which was conveyed; that Dooley had

been in possession under this contract and cut off wood and timber; and that there were difficulties and litigation between them in regard to it. The indorsement of $260 on one of the notes was made at the time the deed and mortgage were delivered, but did not represent any consideration then advanced, but was the result of some arrangement between the parties which is not disclosed, and it reduced the notes to the amount of the consideration named in the deed and mortgage, $2,000. This shows what without it would be the only reasonable way of accounting for the amount of the notes, that other considerations than the price of the land entered into them. Construing the agreement in the light of these circumstances, that the parties were settling differences as well as selling and buying land, that they did include something besides the price of the land in the notes, that they estimated the quantity of land at 450 acres and fixed the price at four dollars an acre, we think that by the words "sum set forth in said notes" they did not mean the whole amount of the notes, but that sum included in them which was the price of the number of acres mentioned in the deed at four dollars an acre. This would give the result reached by the master.

3. The plaintiff's third exception is to the refusal of the master to make deductions and allowances for certain supposed defects in title. Two defects in title are specified which existed when the mortgage was given; but the master finds that both have been made good, and there is no occasion to consider whether the plaintiff could avail himself as against the defendant of a breach by Wiley of the agreement made when the mortgage was given.

It is argued that the conveyance by Ketchum to Wiley of the twenty-five acres of the Johnson lot, so called, being a portion of the land in Vermont, was made after the land had been diminished in value by the cutting off of timber by Ketchum, and that the plaintiff cannot be required to accept that reconveyance as making good the title. The title to the land was made good by the deed to Wiley, and it was held under the mortgage, and the title to it was made absolute in the defendant by the foreclosure in Vermont, and its value was properly allowed by the master as part of the value of the land in Vermont. Whether any timber was cut from it by Ketchum under his paramount

title under such circumstances as would make the allowance of its value upon the mortgage debt proper, and what amount, if any, was so cut, and whether any right there may have been to a reduction of the debt on that account was waived by Peter Dooley, we need not consider; no exception was taken to any finding or action of the master in that respect.

4. The plaintiff's fourth exception is to the allowance of two of the notes, on the ground that they are not correctly described in the mortgage. The only discrepancy which appears is, that the note payable in five years from its date is described in the mortgage as payable in four years; that is, the mortgage describes two notes payable in four years, instead of one payable in four years and one in five years. The note payable in five years is the one on which the $260 was indorsed at the time the mortgage was given. The master properly treated the amount due on it as due on the mortgage.

5. The exception to the allowance for payment of taxes, and of interest on such payment, must be overruled.

6. The sixth exception is to the allowance of any interest on the notes after January 1, 1875, on the ground that, by the agreement of that date between Ketchum and Peter Dooley, interest on the notes was to stop at that time. The words relating to interest on the notes are, " the interest on the forementioned notes at the date of this instrument per agreement is to stop." This agreement has already been adverted to in considering the first exception. Besides giving to Ketchum the right to cut timber on land of Dooley in Vermont, to apply on the mortgage notes, it gave him the right to cut a certain quantity of timber on the mortgaged premises in this State. One Arnold held a deed of the land in this State at the time of the mortgage, as security for a note of Wiley's, and. Ketchum had paid him and taken a quitclaim deed of the land from him. By the agreement, Ketchum agreed to quitclaim this land to Peter Dooley. The whole agreement was in the form of a sale of timber standing in Vermont in sufficient quantity to pay the mortgage debt, to be cut and removed within three years, and of a certain quantity of timber standing in this State, at a fixed price, which was equal to the amount Ketchum had paid to Arnold, and Ketchum was to extinguish any claim under Arnold's deed by quitclaim-

ing to Peter Dooley. Under this agreement Ketchum cut off about the amount of timber he was authorized to cut on the Massachusetts land, but a little less. The master finds that some of it, but he cannot tell how much, was cut from the land in Vermont. All that was cut was applied by Ketchum to reimburse himself for the money he had paid to Arnold. It was not an executed sale of the timber in Vermont, and Ketchum's right to cut it was limited to three years. Nothing was ever done under the part of the contract that related to the mortgage notes; no payment was made on the notes by Ketchum, and he did not give the quitclaim to Dooley. All that was done under the whole agreement was, that Ketchum cut off the timber to repay himself what he had paid to Arnold; he gave a quitclaim of the right he had from Arnold, not to Peter Dooley, but to the defendant when he became assignee of the mortgage which Ketchum held, which this bill is brought to redeem. The agreement so far as related to that mortgage was never acted on by the parties, and was wholly abandoned by them. The agreement as to interest on the notes fell with the rest.

7. The seventh exception is to the allowance of interest on the costs of the foreclosure suit in Vermont. The same mortgage covered lands in Vermont, and the plaintiff obtained a decree of foreclosure in that State. The decree was entered on December 22, 1883, fixed the amount due on the mortgage and the costs of suit, and required payment of those sums and interest by a fixed day, or the right of redemption would be foreclosed. The payment was not made, and the foreclosure was completed. In fixing the value of the land to be applied to the mortgage debt, the master deducted from its full value the amount of the costs, with interest from the date of the decree until the foreclosure was perfected. The objection is to the allowance of the interest. We think this was right. The amount of the costs when the mortgage was foreclosed should be deducted from the value of the land, to ascertain the amount that was applicable to the debt, and that, by the terms of the decree, included interest from the date of the decree.

8. The eighth exception is to the application to the Arnold mortgage of the value of the timber cut by Ketchum, as stated under the sixth exception. The application to the Arnold mort-

gage was made by Ketchum. ˙ The master applied the value of the timber cut by Ketchum to the defendant's mortgage.

The defendant's exception to the refusal of the master to allow annual interest must be overruled. His other exceptions become immaterial.    *Exceptions of both parties overruled.*